

United States Courts
Southern District of Texas
FILED

OCT 20 2004

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PARAMOUNT PICTURES CORPORATION | § § § | CIVIL ACTION NO. 4:04-CV-3488 |
| v. | § § | **JURY TRIAL DEMANDED** |
| JOHNSON BROADCASTING, INC. | § § | |

## DEFENDANT'S ORIGINAL ANSWER

Defendant Johnson Broadcasting, Inc. files this original answer to Plaintiff's Original Complaint as follows:

1. Defendant denies the allegations contained in Paragraph 1 of Plaintiff's Original Complaint.

2. Defendant admits the allegations contained in Paragraph 2 of Plaintiff's Original Complaint.

3. Defendant admits the allegations contained in Paragraph 3 of Plaintiff's Original Complaint.

4. Defendant admits the allegations contained in Paragraph 4 of Plaintiff's Original Complaint.

5. Defendant admits the allegations contained in Paragraph 5 of Plaintiff's Original Complaint.

6. Defendant admits the allegations contained in Paragraph 6 of Plaintiff's Original Complaint.

Defendant's Original Answer – Page 1
HOU:2364658.1

EXHIBIT C
PAGE____OF____

7. Defendant admits the allegations contained in Paragraph 7 of Plaintiff's Original Complaint.

8. Defendant admits the allegations contained in Paragraph 8 of Plaintiff's Original Complaint.

9. Defendant denies Plaintiff's allegations in Paragraph 9 that "[t]he amounts and timing of such payments were fixed and non-contingent, and they were not tied to any Program ratings performance guarantees." Defendant admits the remaining allegations contained in Paragraph 9 of Plaintiff's Original Complaint.

10. Defendant denies the allegations contained in Paragraph 10 of Plaintiff's Original Complaint.

11. Defendant denies the allegations contained in Paragraph 11 of Plaintiff's Original Complaint.

12. Defendant admits that it sent a letter to Plaintiff dated July 13, 2004. Defendant denies the remaining allegations contained in Paragraph 12 of Plaintiff's Original Complaint.

13. Defendant admits the allegations contained in Paragraph 13 of Plaintiff's Original Complaint.

14. Defendant denies the allegations contained in Paragraph 14 of Plaintiff's Original Complaint.

15. Defendant denies the allegations contained in Paragraph 15 of Plaintiff's Original Complaint.

16. Defendant denies the allegations contained in Paragraph 16 of Plaintiff's Original Complaint.

17. Defendant denies the allegations contained in Paragraph 17 of Plaintiff's Original Complaint.

18. Defendant denies the allegations contained in Paragraph 18 of Plaintiff's Original Complaint.

19. Defendant denies the allegations contained in Paragraph 19 of Plaintiff's Original Complaint.

20. Defendant denies the allegations contained in Paragraph 20 of Plaintiff's Original Complaint.

## AFFIRMATIVE DEFENSES AND COUNTERCLAIM

21. Johnson Broadcasting operates an independent television station in Houston called KNWS or Channel 51. The station is dependent upon companies like Paramount for programming.

22. Paramount has illegally tied distribution of *Judge Joe Brown* and *Judge Judy* (tying products) to the distribution of *Becker*, and tied distribution of all shows to barter advertising in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, *et. Seq.*, and TEX. BUS. & COM. CODE § 15.05(a) and (b). The illegal tie consists of:

   (a) The tying product is a separate product from the tied products;

   (b) In order to obtain licenses for *Judge Joe Brown* and *Judge Judy,* Johnson Broadcasting was compelled also to agree to license and distribute the tied product. Additionally, Johnson Broadcasting was compelled to provide barter advertising time to Paramount for all shows;

(c) Paramount, individually and through its parent, Viacom, possesses market power over syndicated television shows sufficient to force owners of independent television stations to license and distribute the tied products in order to also obtain, have access to, license, and distribute more desirable shows, such as *Judge Joe Brown* and *Judge Judy*. Paramount is a leading provider of television shows for independent television stations. Viacom is a leading global media company, with preeminent positions in broadcast and cable television. With programming that appeals to audiences in every demographic category across virtually all media, Viacom is a leader in the creation, promotion, and distribution of entertainment, news, sports, music, and comedy. Viacom's well-known brands include CBS (including the evening news), MTV, Nickelodeon, Nick at Nite, VH1, BET, Paramount Pictures, Paramount Television, King World Productions, Infinity Broadcasting, UPN, TV Land, Comedy Central, CMT: Country Music Television, Spike TV, and Showtime. Additionally, Viacom owns 39 television stations that are located in the 7 largest, and 15 of the top 20, television markets in the United States. Viacom's owned and operated television stations reach approximately 45% of all television households in the United States;

(d) the tie results in anticompetitive effects in the markets for the tied products; and

(e) the tie involves a not insubstantial amount of interstate commerce in the markets for the tied products.

Paramount's conduct is known as "block booking" and it has been declared a tying agreement that violates the antitrust laws. Block booking injures television stations that are compelled to accept shows they do not want and it injures other distributors who are deprived of an opportunity to license their product to television stations who have been forced to accept tied product.

23. *Judge Joe Brown* and *Judge Judy* are reality courtroom shows and are separate products from *Becker*, which is a sitcom with edgy humor. *Judge Joe Brown* is described by Paramount as:

**Defendant's Original Answer – Page 4**

HOU:2364658.1

> The daily, half-hour, reality courtroom series presided over by Judge Joe Brown. A dynamic, tough-talking, no-holds-barred jurist, Judge Joe brings his own sensibilities and unique outlooks to the courtroom.

*Judge Judy* similarly described as:

> The Emmy-nominated, daily, half-hour, syndicated, courtroom series presided over by outspoken former family court judge, Judge Judith Sheindlin. JUDGE JUDY invites viewers into her courtroom to witness hard-hitting and compelling disputes between real litigants.

In contrast, *Becker* is described by Paramount as:

> BECKER centers around the life of Dr. John Becker (Ted Danson), a cantankerous, yet dedicated and talented physician, whose humanity prevails despite his gruff and sarcastic demeanor. BECKER will continue to pontificate at his favorite local diner joined by Jake (Alex Desert), the blind proprietor of the local newsstand, Hector (Jorge Garcia), the unemployed entrepreneurial spirit and Chris Connor (Nancy Travis). At his practice, Becker's no nonsense head nurse Margaret (Hattie Winston) will gingerly keep John and his affable, yet dim-witted nurses-aid Linda (Shawnee Smith) focused. John Becker, a malcontent with a very big heart, is a bright but cynical Harvard Medical School graduate who is a loner and has "intimacy issues" to say the least. To Becker, society has gone mad – it's full of inconsistencies and backward thinking and it's his job to point this out. Although a diagnostician by trade, Becker dispenses diagnoses and strong opinions even when unsolicited. Yet through it all, his friends and colleagues not only accept, but adore him.

24. The shows are separate products from the barter advertising.

25. Both *Judge Judy* and *Judge Joe Brown*, which achieved high Nieslen ratings, were licensed for 52 weeks. At the conclusion of the 52 weeks, Paramount announced to Johnson Broadcasting that it would not renew either license. *Judge Joe Brown* is now broadcast in Houston on KTXH, a Fox station and an affiliate of UPN, a sister company to Paramount. *Judge Judy* is broadcast in Houston on KRIV, also a Fox station.

26. As an independently owned television station, Johnson Broadcasting lacks the clout of the national broadcasting networks. Because it lacks bargaining strength, Johnson Broadcasting became a target of Paramount's illegal tying arrangements.

27. The adverse affects of the illegal tying were made worse by Paramount's undisclosed decision to license *Becker* to WGN for showing in Houston in direct competition with Johnson Broadcasting. Additionally, upon information and belief, Paramount licensed *Becker* to WGN for showing in Houston for less money and/or barter than was charged to Johnson Broadcasting, further injuring Johnson's competitive position in the market place.

28. Because tying is illegal, the contracts are void and unenforceable. Additionally, Johnson Broadcasting is entitled to recover mandatory treble damages under the antitrust laws as a result of the illegal tying. Those damages are the lost net profits that would have been achieved had Johnson Broadcasting not been compelled to accept the tied product and barter advertising. The conduct of Paramount was willful or flagrant so as to justify an award of treble damages under TEX. BUS. & COM. CODE § 15.21(a)(1). Johnson Broadcasting is entitled to recover its attorneys' fees under both the federal and state antitrust laws.

29. The acceleration upon default clauses in the contracts constitute an unreasonable penalty and are therefore unenforceable.

30. Paramount has a duty to mitigate its damages and license the shows to other stations in the Houston area. Paramount has failed to make any effort to mitigate its damages.

31. The consideration for the contracts has failed in whole or in part. After the contracts were signed, Paramount took deliberate action which caused the consideration to fail in whole or in part. Paramount cancelled production of new episodes of *Becker* and *The Parkers* and licensed the existing shows to competing stations in Houston. Under the alleged contract, Johnson Broadcasting is obligated to show *Becker* for 208 consecutive weeks, 5 times per week, for a total of 1,040 shows commencing September 15, 2003. The contract price is $4,000 per week. Paramount's sister company, CBS, cancelled *Becker* on January 28, 2004 after just 129 episodes. Each episode must be played eight times under the contract. The contract for *The Parkers* is for 156 consecutive weeks, seven times per week, for a total of 1,092 shows, commencing September 15, 2003, with a $6,000 per week license fee. *The Parkers* has just 110 episodes and was cancelled on May 10, 2004. Each episode must be played ten times under the contract. Paramount did not disclose its knowledge that cancellation was pending for either *Becker* or *The Parkers* to Johnson Broadcasting when those contracts were signed. Had Paramount disclosed its knowledge regarding pending cancellation of *Becker* or *The Parkers*, Johnson would never have signed the contracts. Additionally, Paramount failed to disclose that *The Parkers* would be broadcast on BET, a Viacom company, in Houston and *Becker* would be broadcast on WGN in Houston in direct

competition with the broadcasting of *The Parkers* and *Becker* in Houston by Johnson Broadcasting. Paramount had a duty to disclose known facts at the time the contracts were signed in view of the representations that the shows were tremendous hits with high Nielsen ratings and were continued to be aired on a first run basis on national television.

32. Paramount represented that *Becker* and *The Parkers* should deliver Nielsen ratings of 3's and 4's for Johnson Broadcasting. Once Paramount made this representation it had a duty to disclose that it intended to terminate the filming of new episodes which would require Johnson to air each episode of *Becker* eight times and each episode of *The Parkers* ten times to honor the contract. Additionally, Paramount had a duty to disclose that it intended to license both *Becker* and *The Parkers* to other stations in Houston which would further dilute Johnson Broadcastings viewership. Had these facts been disclosed, Johnson Broadcasting would not have signed the contracts. Accordingly, Johnson Broadcasting was induced to sign the contracts through nondisclosure of material facts which should have been disclosed in order to make affirmative representations truthful. Johnson Broadcasting has sustained damages caused by the misrepresentations and seeks to recover those damages herein.

## ATTORNEYS' FEES

33. In order to prosecute this action, it has been necessary for Defendant to employ the services of an attorney. Defendant is entitled to recover its reasonable and necessary attorneys' fees, the amount of which will be proved at the time of trial.

Defendant's Original Answer – Page 8
HOU:2364658.1

## CONDITIONS PRECEDENT

34. All conditions precedent to bringing these claims have been waived or satisfied.

**WHEREFORE, PREMISES CONSIDERED,** Defendant Johnson Broadcasting, Inc. requests that this Court deny any relief sought by Plaintiff Paramount Pictures Corporation, that Johnson Broadcasting, Inc. recover a judgment for its damages, that such damages be trebled, that Johnson Broadcasting, Inc. recover its costs, pre-judgment interest, together with its reasonable and necessary attorneys' fees, and for such other and further relief at law and in equity to which Defendant may show itself justly entitled.

Respectfully submitted,

_____
Joe C. Holzer
State Bar No. 09933800
Southern District I.D. No. 4712
Attorney-in-Charge for Defendant
600 Travis, Suite 4200
Houston, Texas 77002
Telephone: 713-220-4172
Facsimile: 713-238-7278

**DEFENDANT DEMANDS TRIAL BY JURY**

OF COUNSEL:
ANDREWS KURTH LLP
600 Travis, Suite 4200
Houston, Texas 77002
Telephone: 713-220-4200
Facsimile: 713-220-4285

Defendant's Original Answer – Page 9
HOU 2364658.1

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served on the following counsel of record on this 20th day of October, 2004:

James A. Reeder, Jr.
Ba M. Nguyen
Vinson & Elkins, L.L.P.
2300 First City Tower
1001 Fannin Street
Houston, Texas 77002-6760
**Attorneys for Plaintiff**
*Via Facsimile 713-615-5947*

_____
Joe C. Holzer

Defendant's Original Answer – Page 10

HOU 2364658.1