Joseph L. Reece
Eric J. Jenkins
DAVIS WRIGHT TREMAINE LLP
701 West 8th Avenue, Suite 800
Anchorage, Alaska 99501
Telephone:  (907) 257-5300
Facsimile:  (907) 257-5399

Attorneys for Plaintiff
Warner Bros. Domestic Television Distribution

## UNITED STATES DISTRICT COURT

## DISTRICT OF ALASKA

| | |
|---|---|
| WARNER BROS. DOMESTIC TELEVISION DISTRIBUTION, a division of WARNER BROS. TELEVISION DISTRIBUTION INC., a Delaware corporation,<br><br>             Plaintiff,<br><br>     vs.<br><br>FIREWEED COMMUNICATIONS CORPORATION, an Alaska corporation,<br><br>             Defendant. | Case No.  3:06-cv-00074-TMB<br><br>WARNER BROS. DOMESTIC TELEVISION DISTRIBUTION'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS |

## I.    INTRODUCTION

Defendant Fireweed Communications Corporation ("Fireweed") argues in its

opposition that pleading legal conclusions can be sufficient to avoid dismissal under Fed.

R. Civ. P. 12(b)(6), and that its counterclaims need not allege the basic facts upon which

its claims are based.  To the contrary, simply reciting antitrust words like "market power"

is not sufficient to state an antitrust claim, nor can Fireweed launch an expensive and

time consuming antitrust case without defining the relevant markets at issue.  While

Fireweed has pleaded some basic facts for its non-antitrust state law claims – the sale of

DVDs in Anchorage and the broadcast of "Friends" on TBS – the facts alleged are legally

insufficient to establish either an unfair trade practice or a breach of contract.  Indeed,

Fireweed is asking this Court to rewrite, rather than enforce, the license agreements that it

entered into with Warner Bros. Domestic Television Distribution ("WBDTD").  Because

Fireweed's Counterclaims fail to state a cognizable claim for relief, and because

Fireweed cannot cure the defects in its Counterclaims by amendment, WBDTD's motion

to dismiss should be granted and Fireweed's Counterclaims dismissed with prejudice.

## II.    ARGUMENT

### A.    Rule 12(b)(6) Standard.

WBDTD and Fireweed agree that a complaint is subject to dismissal under Fed. R.

Civ. P. 12(b)(6) if the allegations in the complaint would not entitle the plaintiff to any

relief, either because they lack "a cognizable legal theory" or do not contain "sufficient

facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dept.*, 901

F.2d 696, 699 (9th Cir. 1988) (emphases added); Opp. at 10.  Fireweed contends that it

has met this burden because it has "alleged all the elements of its claim," and suggests

that even legal conclusions may be considered in determining whether a complaint is

subject to dismissal.  Opp. at 12, 18.  Neither assertion is correct.

**Davis Wright Tremaine LLP**
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

"While no special pleading standards attach to antitrust claims, plaintiffs must do more than assert conclusory allegations." *CCBN.Com, Inc. v. Thomson Fin., Inc.*, 270 F. Supp.2d 146, 154 (D. Mass. 2003). To avoid dismissal of its antitrust claims, Fireweed must "sketch the outline of the antitrust violation with <u>allegations of supporting factual detail</u>." *Les Shockley Racing, Inc. v. National Hot Rod Ass'n*, 884 F.2d 504, 508 (9th Cir. 1989) (emphasis added). Fireweed, "may not evade these requirements by merely stating legal conclusions; <u>if the facts do not at least outline or adumbrate a violation of the Sherman Act, the plaintiffs will get nowhere merely by dressing them up in the language of antitrust</u>.'" *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 736 (9th Cir. 1987) (citations omitted and emphasis added); *see also CCBN.Com, Inc.,*, 270 F.Supp.2d at 154 (dismissing complaint for failure to state a claim: "[e]ven under notice pleading standards, as framed, the complaint does nothing more than parrot the second element of the tying claim and assert that . . . it is implicated here")

**B.      Fireweed Has Failed to State a Tying Claim Under Federal and State Antitrust Laws. [1]**

Count I of Fireweed's Counterclaim alleges that WBDTD tied the sale of the syndication rights to "Friends" and "The Drew Carey Show" in violation of Section 1 of

---

[1] Fireweed also alleged claims under the California and Alaska antitrust laws. In its Opposition, Fireweed concedes that the analysis under the state laws is the same as the analysis under the federal laws. Opp. at 29-30. Thus, although WBDTD will only discuss the federal claims in this Reply, the discussion applies to Fireweed's state anti-trust claims as well.

**Davis Wright Tremaine LLP**
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

the Sherman Antitrust Act, 15 U.S.C. § 1.[2]  This claim must be dismissed because

Fireweed has failed to define the relevant markets at issue.

Fireweed agrees that to state a tying claim it must, among other things,

demonstrate: (1) a tie between two products or services sold in different markets; and (2)

either that WBDTD has market power in the tying product market <u>and</u> that the tie affects

a not insubstantial volume of commerce in the tied product market; or in the absence of

market power, that the tie had an adverse effect on competition in the relevant market for

the tied product.  *Paladin Associates, Inc. v. Montana Power Company*, 328 F.3d 1145,

1159 (9th Cir. 2003); *CCBN.Com*, 270 F.Supp.2d at 146.  Regardless of which path

Fireweed elects, defining the relevant markets for the tying and tied products is an

essential first step that Fireweed has failed to take.

> **1.      Fireweed Cannot Establish an Improper Tying Arrangement Because It Has Not Defined A Relevant Market for Either the Tying or the Tied Products.**

The parties agree that the analysis of whether an alleged tie violates the law

requires definition of the relevant markets for the tying and tied products.  Opp. at 13, 18,

23.  The parties disagree about the kind of allegations regarding the relevant market that

the plaintiff must make to withstand a Rule 12(b)(6) motion.  Fireweed believes that it

only has to identify the relevant markets in a conclusory fashion at the pleading stage,

---

[2]Fireweed appears to have dropped its claims under Section 3 of the Clayton Act given the absence of any reference to this statute in its Opposition.  The claims under Section 3 should be dismissed because this statute does not apply to intangible items like licenses for syndicated programming.  *See* Mot. at 10.

**Davis Wright Tremaine LLP**
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

and that it need not allege facts to support its market definitions.  *See, e.g.,* Opp. at 12.

Consistent with this (erroneous) belief, Fireweed's allegations relating to the relevant

markets are limited to the conclusory assertion that WBDTD has market power in a

"Friends series market." Counterclaims ¶¶ 3, 19-20.  No cases are cited to support

Fireweed's extraordinary contention that the relevant tying product market consists of

only one television program, nor are facts pleaded to support such an allegation.

Fireweed's allegations are not sufficient to withstand a motion to dismiss its tying claim.

An antitrust plaintiff bears the burden at the pleading stage of "alleg[ing] a

relevant geographic and product market in which trade was unreasonably restrained or

monopolized." *Global Disc. Travel Servs. v. Trans World Airlines*, 960 F.Supp. 701, 704

(S.D.N.Y. 1997).  "Failure to identify a relevant market is a proper ground for dismissing

a Sherman Act claim." *Tanaka v. University of Southern California*, 252 F.3d 1059,

1063 (9th Cir. 2001) (granting motion to dismiss claim under Sherman Act).  *United*

*Magazine v. Murdoch Magazines Distribution*, 146 F.Supp.2d 385, 398 (S.D.N.Y. 2001)

(dismissing tying claim for failure to adequately define markets in complaint).

A pleading that simply states in conclusory terms that a market exists does

sufficiently plead a relevant market.

> Sufficient allegation of the relevant product market with
> reference to the rule of interchangeability is necessary to state
> a claim for relief .  Determining the proper contours of a
> relevant market also involves an examination of the closely
> related concept of cross-elasticity of demand.  Cross-elasticity
> of demand measures the change in demand for a product
> given a change in price of a related product . . . the carriers
> claim that at all times material herein the relevant market is

**Davis Wright Tremaine LLP**
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

1
2
3
4
5

> defined as the home delivery subscriptions of the Daily News. The first fatal flaw in this market definition is that it does not even reference the rule of reasonable interchangeability. There is no discussion of other products in the market that potentially compete with the Daily News, of arguably competing products that should not be included in the market, or of the factors that make the Daily News a unique product. This failure to reference the rule of interchangeability is alone grounds for dismissal.

6
7

*Mathias*, 152 F.Supp.2d at 481-82 (citations omitted). *See also Associated Gen'l*

8

*Contractors of Cal., Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526,

9

528 n.17 (1983) (dismissing complaint for failure to state an antitrust claim, and

10

recognizing that "a district court must retain the power to insist upon some specificity in

11

pleading before allowing a potentially massive factual controversy to proceed"); *United*

12
13

*Magazine*, 146 F.Supp.2d at 398 (dismissing tying claim where complaint "fails to make

14

reference to the rule of reasonable interchangeability . . . let alone assert a rational

15

explanation of why the relevant market should be restricted to individual supertitles");

16

*Syncsort Inc. v. Sequential Software, Inc.*, 50 F.Supp.2d 318, 333 (D.N.J. 1999) ("failure .

17
18

. . to define the market in terms of reasonable interchangeability or explain the rationale

19

underlying its narrow proposed market definitions is, in itself, grounds for dismissal").

20

Here, Fireweed has not alleged any factual basis for its assertion that the relevant

21

tying product market consists of only the program "Friends," and has failed to even try to

22

define a tied market, much less allege facts. No facts are alleged regarding cross-

23

elasticity of demand for other programs that are potentially in the relevant markets, or

24

whether these programs are reasonably interchangeable, or any other facts that give

25

**Davis Wright Tremaine LLP**
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

substance to its conclusory market allegations. Fireweed's failure to plead any facts in support of the relevant markets it has identified warrants dismissing the Counterclaims.[3] *See United Magazine*, 146 F.Supp2d at 398 and cases cited above.

Moreover, Fireweed cannot save its tying claim by amending the Counterclaims to add a few facts: the identification of single-product markets in this case is unsupportable as a matter of law. Courts have repeatedly held that antitrust claims alleging single-product markets are generally deficient as a matter of law. *TV Commc'ns Network, Inc. v. Turner Network Tel., Inc.*, 964 F.2d 1022 (10th Cir. 1992) (affirming dismissal of complaint alleging that relevant market consisted of one television channel); *Mathias*, 152 F. Supp.2d at 481-82 (dismissing complaint that alleged a single-brand product market); *see also Tarrant Serv. Agency, Inc. v. American Standard, Inc.*, 12 F.3d 609, 614-15 (6th Cir. 1993) (only in exceptional circumstances, such as where a product is unique and no reasonable substitutes exist, will a single brand of product reside in its own relevant market); *International Logistics Group, Ltd. v. Chrysler Corp.*, 884 F.2d 904, 908-09 (6th Cir. 1989) (same).

---

[3] Contrary to Fireweed's argument, its obligation to eventually prove the relevant market with facts does not excuse it from alleging sufficient facts to outline a relevant market. Indeed, the cases upon which Fireweed relies for its argument all affirmed the dismissal of the complaints, rejecting the narrow market alleged by the plaintiffs and concluding that the plaintiffs had failed to allege that the defendants had power in a properly defined relevant market. *See* Opp. at 12-13 (citing *Foundation for Interior Design Educ. Research v. Savannah College of Art & Design*, 244 F.3d 521, 530-31 (6th Cir. 2001), *Double D Spotting Serv., Inc. v Supervalu, Inc.*, 136 F.3d 554, 558-61 (8th Cir. 1998), and *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436-43 (3d Cir. 1997)).

**Davis Wright Tremaine LLP**
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

1    Indeed, one Court faced with the contention that a single product could constitute

2  its own market rejected the contention by resorting to an analogy that is of particular

3  relevance to this case:

4

5           The plaintiff's argument is analogous to a contention that a
            consumer is "locked into" Pepsi because she prefers the taste,
6           or NBC because she prefers "Friends," "Seinfeld," and "E.R."
            A consumer might choose to purchase a certain product
7           because the manufacturer has spent time and energy
            differentiating his or her creation from the panoply of
8           products in the market, but at base, Pepsi is one of many
            sodas, and NBC is just another television network.  Likewise,
9           tickets on TWA are like tickets on any other airline.

10  *Global Disc.*, 960 F. Supp. at 705; *see also United States v. E. I. DuPont de Nemours &

11  Co.*, 351 U.S. 377, 393 (1956) (despite differences in their formulae, each soft drink does

12  not reside in its own relevant market).

13

14    Fireweed cannot allege any facts that are capable of supporting the allegation that

15  "Friends" and "The Drew Carey Show" each reside in their own relevant markets.

16  Differences in the desirability or cost of "Friends" and "The Drew Carey Show" (or

17  "Seinfeld" or other syndicated television shows) does not justify placing each show in its

18  own relevant market.  Each show is "just another" syndicated television program, and a

19  

20  market limited to any one of them is untenable as a matter of law.  *Global Disc.*, 960 F.

21  Supp. at 705.[4]  Nor do differences in the cost of licensing shows mean that they reside in

22  separate (much less their own) relevant markets: "[i]n determining the market under the

23

24

25  [4]Fireweed's recognition that there are other "syndicated television shows comparable to Friends or at any rate better and/or cheaper than Drew Carey" is a concession that the relevant tying and tied product markets contain more than one program.  Opp. at 23.

**Davis Wright Tremaine LLP**
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

Sherman Act, it is the use or uses to which the commodity is put that control.  <u>The selling price between commodities with similar uses and different characteristics may vary</u>, so that the cheaper product can drive out the more expensive." *DuPont*, 351 U.S. at 395-96, 400-01 (holding that cellophane resided in a market that included more and less expensive types of flexible wrapping materials) (emphasis added).  Even Fireweed concedes that, had it not spent money on one program, there was other programming available that it would have obtained to fill the same time slots.  Counterclaim at ¶ 24.

The only case that Fireweed cites to support its allegation that the relevant markets each consist of one program, actually supports WBDTD's position that the markets consist of all syndicated programming.  The antitrust plaintiff in *Paramount Pictures Corp. v. Johnson Broadcasting, Inc.*, No. Civ. A. H-04-03488 (S.D. Tex.) alleged a relevant market consisting of "<u>syndicated television shows</u>."  *See* Opp. At 21 Ex. C (Answer/Counterclaim ¶ 22(c)).  This is precisely the market that WBDTD contends is appropriate in this case.  Mot. at 15.

In short, Fireweed's tying claim must be dismissed because Fireweed has failed to define a relevant market for either the tied or the tying products.  The assertion that Friends and The Drew Carey Show reside in their own single product markets fails as a matter of law; therefore, dismissal should be with prejudice.  *Mathias*, 152 F. Supp.2d at 483 ("[A]t a basic level, the *Daily News* is a newspaper, functionally interchangeable

**Davis Wright Tremaine LLP**
LAW OFFICES
Suite 800 · 701 West 8ᵗʰ Avenue
Anchorage, Alaska  99501
(907) 257-5300 · Fax: (907) 257-5399

with many others [and] . . . [t]he Court cannot see the utility of further expending the limited resources of the parties and the judiciary to rediscover that simple concept.").

### 2. Fireweed Has Not Alleged that WBDTD Has Market Power in the Tying Product Market or Pleaded the Requisite Effect on Commerce.

Fireweed's failure to properly define the relevant market makes any discussion of WBDTD's market power and the alleged tie's effects on commerce in the tied product market largely academic. Nevertheless, even if Fireweed had defined a relevant market, its allegations of market power and effects on commerce wholly fail to satisfy its pleading burden and make the tying claim ripe for dismissal.

An antitrust plaintiff must "sketch the outline of the antitrust violation with allegations of supporting factual detail." *Les Shockley Racing, Inc.*, 884 F.2d at 508. A conclusory statement that an antitrust defendant has "market power" does not suffice: "[m]ore must be alleged to satisfy the market power element of a § 1 claim than the mere assertion that such power exists." *CCBN.Com, Inc.*, 270 F. Supp. 2d at 155 (emphasis added). The court in *CCBN.Com* held that a complaint that made no estimates of the defendant's market share, did not allege that the defendant had the ability to control prices or exclude competition, and did not even identify other competitors in the market or barriers to entry, failed to allege market power. *Id.*

The only "fact" that Fireweed alleges to support its assertion that WBDTD has "market power" does no such thing. In its Counterclaims, Fireweed alleges that the fact

**Davis Wright Tremaine LLP**
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

that "Friends" is protected by copyright gives WBDTD market power. Counterclaims ¶ 3; Opp. at 18. As WBDTD explained in its Motion (a discussion that Fireweed does not rebut), the Supreme Court recently held that <u>there is no presumption that intellectual property rights bestow market power</u>; plaintiffs always must prove that the defendant has market power. *See* Mot. at 14-15. Thus pleading possession of a copyright is no more adequate to support an allegation of market power than the conclusory assertion that market power exists.

Nor does the statement that WBDTD is "among the world's largest and most well-known distributors of, among other things, syndicated television programming and motion pictures for broadcast on cable television" mean that WBDTD has market power. Opp. at 11 n.9. Such a vague assertion does not provide an estimate of WBDTD's market share, demonstrate that WBDTD can control prices or exclude competition, mean that there are barriers to other distributors entering the market, or otherwise support Fireweed's contention that WBDTD has market power. *See CCBN.Com, Inc.*, 270 F. Supp. 2d at 155.[5]

Without properly defined markets, it is "impossible to discern what effect, if any, [defendant's] alleged tying may have in 'foreclos[ing]' commerce in the[tied product]

---

[5]Fireweed tries to buttress its assertion of "market power" by citing to the market positions of other subsidiaries of Time Warner Inc. Whether another Time Warner subsidiary is the "'second largest operator of cable systems in the U.S. in terms of subscribers served,'" *see* Opp. at 3, has <u>no</u> bearing on whether <u>WBDTD</u> has power in the relevant market that contains the syndication rights to "Friends."

**Davis Wright Tremaine LLP**
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

market," as required under per se analysis. *CCBN.Com, Inc.* 270 F. Supp. 2d at 156.

Similarly absent factual allegations regarding market share and market power, the inquiry

into whether the alleged tie adversely affected competition under the rule of reason

"cannot get off the ground." *Id.*

Furthermore, Fireweed has not pleaded harm to <u>competition (as it must)</u>, only

harm to itself. *See* Mot. at 17. The Ninth Circuit's decision in *County of Tuolumne v.*

*Sonora Community Hospital*, 236 F.3d 1148 (9th Cir. 2001), is not to the contrary. Opp.

at 23. In that case, a doctor challenged a hospital's privileging criteria, an allegedly

anticompetitive policy <u>that affected a category of doctors</u>. 236 F.3d at 1158-59. Here,

Fireweed has not alleged that WBDTD imposed the alleged tie on a category of stations

or anyone other than Fireweed.

The foundation for any tying claim is proper definition of the relevant markets for

the tying and tied products. Fireweed's conclusory identification of the relevant markets

-- relevant markets that are, furthermore, legally insupportable --means that WBDTD's

motion to dismiss Fireweed's tying claim should be granted without leave to amend.

**C.     Fireweed's Restraint of Trade Claim Should be Dismissed With Prejudice.**

Fireweed's other antitrust claim, for restraint of trade, alleges that contracts

between the WB 100-Plus network and third party syndicators restricted the syndicators'

right to license programming to other stations. Counterclaims ¶¶ 7-11; Opp. at 3. Like

Fireweed's tying claim, this claim falls short due to Fireweed's failure to allege facts

Davis Wright Tremaine LLP
LAW OFFICES
Suite 800 · 701 West 8ᵗʰ Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

sufficient to show that the alleged restraint is capable of harming competition in the relevant market. This claim also fails because the allegations do not concern WBDTD but rather the alleged actions of separate corporate entities.

Market power in a properly defined market is a prerequisite to claims for restraint of trade. Mathais, 152 F.Supp.2d 465 ("without a proper delineation of both the product and geographic markets, a claim under § 1 or § 2 of the Sherman Act will be dismissed"). Fireweed has not alleged facts sufficient to show that WBDTD has power in any properly defined market. Indeed, in contrast to its tying claim, Fireweed's claim for restraint of trade would suggest that it feels the product market is all syndicated television programming. In any event, no relevant market is defined in Fireweed's counterclaim and its failure to define a relevant market mandates dismissal of its claim for restraint of trade. Mot. at 24-25 & n.11.

In addition, Fireweed's claim should be dismissed because the allegations do not relate to WBDTD's conduct but rather the conduct of separate corporate entities. In its Opposition, Fireweed confirms what WBDTD asserted in its Motion: that an entity other than WBDTD purchased programming for the WB 100-Plus network and imposed the allegedly restrictive contract provisions. Fireweed admits that it is the "WB 100-Plus [that] contracts with programming syndicators to obtain programming," and that it is contracts between the "WB 100-Plus" and "third party syndicators" that contain the allegedly restrictive contract provisions. Opp. at 3; *see also* Mot. at 21. In no way do

**Davis Wright Tremaine LLP**
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

these allegations implicate plaintiff <u>WBDTD</u>.  Fireweed admits that WBDTD is a

separate entity from WB 100-Plus Group Partners, Inc., *see* Opp., Ex. A, and has not

alleged that the WB 100-Plus Group Partners, Inc. or the unidentified "third party

syndicators" were agents for WBDTD or any other facts that could support holding

WBDTD liable for their conduct.  *Cf. Volkswagenwerk A.G. v. Klippan*, 611 P.2d 498,

505 (Alaska 1980) (even a wholly owned subsidiary retains a separate legal identity from

its parent). [6]

Since Fireweed has not alleged facts sufficient to show that the alleged restraint

harmed competition in the relevant market, and cannot hold WBDTD liable for the

actions of WB 100-Plus Group Partners, Inc. or "third party syndicators," Fireweed has

failed to state a claim for restraint of trade against WBDTD and this claim must be

dismissed with prejudice.

**Davis Wright Tremaine LLP**
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

---

[6] Fireweed's admission that WBDTD was not a party to the contracts containing the alleged restriction means that it has not alleged that WBDTD participated in any contracts or conspiracy as it must for a claim under Section 1 of the Sherman Antitrust Act.  15 U.S.C. § 1; *Double D Spotting Serv., Inc.*, 136 F.3d at 558.  Fireweed should not be permitted to amend its Counterclaims to allege that WBDTD conspired with other members of the Time Warner corporate family.  The Supreme Court's decision in *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984), held that a parent company and its wholly owned subsidiary are not capable of conspiring for purposes of Section 1.  This holding has been extended to apply to affiliated companies.  *Siegel Transfer, Inc. v. Carrier Express, Inc.* 54 F.3d 1125, 1134-35 (3d Cir. 1995) (entities that are both wholly owned by the same parent corporation cannot conspire); *Bell Atlantic Bus. Sys. Servs. v. Hitachi Data Sys. Corp.* 849 F.Supp. 702, 705-07 (N.D. Cal. 1994) (entities that are owned 100% and 80% by the same parent corporation could not conspire).

WBDTD's REPLY IN SUPPORT OF MOTION TO DISMISS
DEFENDANT'S COUNTERCLAIMS - 14
ANC 94602v2 40529-5

**D.      Fireweed's Non-Antitrust State Law Claims Fail.**

**1.      Fireweed Cannot State a Claim for Breach of Contract.**

Fireweed's non-antitrust state law claims fare not better than its claims under the Sherman Act.  Fireweed argues that WBDTD breached the parties' contract by selling DVD's of Friends and The Drew Carey Show in Anchorage, and by licensing Friends for transmission on TBS.  Neither of these arguments has merit.[7]

**a.      Fireweed cannot use the covenant of good faith and fair dealing to expand the scope of its contract rights.**

Fireweed does not deny that there is no provision in the parties' contracts prohibiting the sale of DVDs containing "Friends" and "The Drew Carey Show." Instead, Fireweed attempts to use the covenant of good faith and fair dealing to impose a broader right of exclusivity than the parties bargained for.  The covenant of good faith and fair dealing, however, "will not create a duty where one does not exist . . . [and] does not provide courts with carte blanche to rewrite contracts." *Casey v. SEMCO Energy, Inc.*, 92 P.3d 379, 385 (Alaska 2004).  It "cannot add terms to a contract." *Id.* at 384. California law is no different. *Racine & Laramie, Ltd v. Cal. Dept. of Parks and Rec.*, 14 Cal.Rptr.2d 335, 339 (Cal. App. 1993) ("implied covenant is limited to assuring

---

[7] Fireweed also makes a cursory assertion that the contracts could be construed to only permit WBDTD to exhibit "Friends" or "The Drew Carey Show" on pay per view in the Anchorage market.  Opp. at 32.  To the contrary, the contracts merely state that notwithstanding any other exclusive rights granted Fireweed, nothing shall infringe on WBDTD's right to license the shows on pay per view.  Fireweed's attempt to transform this reservation of rights into a rule restraining WBDTD is not a reasonable construction of the contract.  Among other things, it would render superfluous those provisions regulating the licensing of the shows for local origination cablecasting or broadcast by a television station located in Anchorage.

WBDTD's REPLY IN SUPPORT OF MOTION TO DISMISS
DEFENDANT'S COUNTERCLAIMS - 15
ANC 94602v2 40529-5

**Davis Wright Tremaine LLP**
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

compliance with the express terms of the contract and cannot be extended to create

obligations not contemplated in the contract."). Since the contract does not prohibit the

distribution of DVDs, these facts do not state a claim for breach of contract.

### b.   Transmission of Friends on TBS is Not a Breach of Contract.

Pursuant to the parties' contracts for "Friends" and "The Drew Carey Show,"

WBDTD agreed not to license either program for "local origination cablecasting" by any

cable television system operating in the Anchorage market. Mot., Apps. A-B ¶ 18.

Fireweed alleges that the transmission of "Friends" on TBS constitutes "local origination

cablecasting" because "TBS is distributed locally by GCI Cable, a local cable provider

with local content." Opp. at 7; Counterclaims ¶ 31. Fireweed is wrong as a matter of law.

While no definition of the term "local origination cablecasting" appears in the

agreement, the term "origination cablecasting" is defined in 47 C.F.R. § 76.5(p) to mean:

"Programming . . . <u>subject to the exclusive control of the cable operator</u>." (Emphasis

added.) Fireweed could hardly contend, nor does it, that the programming on TBS is

subject to the exclusive control of GCI, the cable operator. <u>See</u> 47 U.S.C. § 522 (5)-(7)

(defining cable operator). Indeed, Fireweed admits that TBS is a national cable channel

that reaches almost 90 million households. Opp. at 6-7. Moreover, the addition of the

word "local" before "origination cablecasting" indicates that, for purposes of this

agreement, the phrase refers to "origination cablecasting" that is also locally originated,

which is not the case with GCI's carriage of TBS. Thus, the transmission of "Friends" on

**Davis Wright Tremaine LLP**
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

WBDTD's REPLY IN SUPPORT OF MOTION TO DISMISS
DEFENDANT'S COUNTERCLAIMS - 16

ANC 94602v2 40529-5

TBS does not constitute "origination cablecasting," and therefore cannot constitute "local origination cablecasting" in breach of the contract.

Fireweed next contends that WBDTD violated the "syndex prohibitions" of the contract by licensing episodes of "Friends" for transmission on TBS. Opp. at 31. This assertion demonstrates a basic misunderstanding of syndex. First, Syndex only applies to the extent of the exclusive rights granted in a contract (47 C.F.R. § 76.107), and does not apply to transmission of non-broadcast satellite services such as TBS.[8] Second, syndex is addressed to a cable unit operator such as GCI, not a distributor of programming such as WBDTD. Syndex provides a television station with the ability to require a cable community unit to black out the same syndicated programming carried on another television station, pursuant to the exclusive rights granted to the first station under a license agreement. Specifically, 47 C.F.R. § 76.151 (2000) (now 47 C.F.R. §76.101) bars a cable operator, in this case GCI, upon timely notice from Fireweed, from carrying a syndicated television show in violation of the exclusivity provisions of a license contract. See also 47 C.F.R. § 76.155 (2000) (now 47 C.F.R. § 76.105). Not only does Fireweed make no claim that it invoked syndex, but its rights would not lie against WBDTD.

Fireweed alleges no facts that constitute a breach of contract. Its breach of contract claims must therefore be dismissed.

---

[8] The syndex rules apply only to carriage of "televisions signals." See 47 C.F.R. § 151 (now 47 C.F.R. § 76.101). "Non-broadcast satellite services (e/g/. ESPN) are not subject to syndex blackouts." Paul Glist, A Field Guide to Syndicated Exclusivity and Signal Carriage, 290 PLI/Pat 9 § III(C)(6) (1990).

**Davis Wright Tremaine LLP**
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

### 2. Fireweed Offers No Basis for the Application of California Unfair Trade Practices Laws.

As WBDTD established in its Motion, the California Unfair Trade Practices Act has no application to conduct occurring in the state of Alaska. Mot. at 31-34. Although Fireweed acknowledges this issue, it does not address it. Instead, Fireweed attempts to gloss over the problems surrounding the extraterritorial application of California law by stating that "Warner Brothers' actions are exactly the type of conduct that the California Act was intended to prevent." Opp. at 35. Even if that were the case, which it is not, the mere fact that conduct is proscribed in California has no bearing on the issue of whether California laws can be applied in Alaska. Since California unfair trade practices law does not apply to conduct occurring in Alaska, Fireweed's claim fails as a matter of law.

### 3. Fireweed Alleges no Conduct that Constitutes an Unfair Trade Practice under Alaska or California Law.

Fireweed asserts that WBDTD engaged in two types of conduct that constitute unfair trade practices. First, Fireweed contends that WBDTD billed it prematurely. Second, Fireweed alleges that WBDTD acted unfairly by selling DVDs of "Friends" and "The Drew Carey Show" in the Anchorage market. Although WBDTD disputes that it ever billed Fireweed prematurely, even if it had, neither this act nor the sale of DVDs constitutes an unfair trade practice. Indeed, Fireweed does not cite a single case that has found either alleged practice, or anything similar, to be actionable.

**Davis Wright Tremaine LLP**
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

Fireweed contends that WBDTD sent it invoices for extended terms before making the corresponding episodes of each show available for broadcast. Opp. at 35. Even if this were true, which it is not, this billing dispute constitutes neither a deceptive nor an unfair trade practice. To constitute an unfair or deceptive practice, the actions of the defendant "must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." *Cheswell, Inc. v. Premier Homes & Land Corp.*, 319 F. Supp. 2d 135, 142 (D. Mass. 2004). Fireweed certainly knew what episodes had been made available to it and was free to dispute those bills if it believed they were incorrect. Fireweed alleges nothing more than a billing dispute between two sophisticated commercial entities.

Fireweed's contention that the sale of DVDs in Anchorage constitutes an unfair trade practice fares no better and is simply a repeat of its claim for breach of the covenant of good faith and fair dealing. As outlined above, there is nothing in the contract that prevents WBDTD from distributing "Friends" or "The Drew Carey Show" through other mediums. Under the guise of an unfair practices claim, and at the expense of WBDTD, Fireweed is asking this Court to grant it broader exclusivity rights than it bargained for. Fireweed cites no authority for the proposition that the unfair practices laws can be used in this manner. The unfair practices laws do "not give the courts a general license to review the fairness of contracts." *Searle v. Wyndham Int'l, Inc.*, 126 Cal. Rptr. 2d 231, 236 (Cal. App. 2002). Fireweed received exactly what it contracted for: the right to

Davis Wright Tremaine LLP
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

broadcast episodes of "Friends" and "The Drew Carey Show" locally in the Anchorage market. That right never encompassed a corresponding prohibition on the sale of these programs on DVD.

### 4. Fireweed's Tortious Interference Claims Fail as a Matter of ` Law.

WBDTD established in its opening brief that actions that are alleged to interfere with a prospective economic advantage do not give rise to a claim for relief under California or Alaska law unless they are unlawful. Mot. at 35-36. Fireweed does not deny that this statement of the law is correct. Instead it contends that it has alleged conduct sufficient to state a claim and cites to its allegation that the restrictions imposed on third-party syndicators who provided programming to the WB 100-Plus network constituted an illegal restraint of trade. For the reasons set forth above, such allegations fail to support the conclusion that WBDTD engaged in any unlawful conduct. Indeed, this claim would be against WB 100-Plus, not WBDTD. Fireweed's claims for tortious interference with prospective economic advantage therefore fail as a matter of law.

**Davis Wright Tremaine LLP**
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

1

## IV.    CONCLUSION

For the foregoing reasons, WBDTD respectfully requests that its motion to dismiss

Fireweed's Counterclaims be granted, without leave to amend.

Dated this 25th day of July, 2006.

s/      Eric J. Jenkins
Eric J. Jenkins
Joseph L. Reece
DAVIS WRIGHT TREMAINE LLP
701 West 8th Avenue, Suite 800
Anchorage, AK 99501
Telephone:  (907) 257-5300
Facsimile:  (907) 257-5399
ABA No. 0011078
E-mail:  ericjenkins@dwt.com
E-mail:  josephreece@dwt.com

Certificate of Service

The undersigned certifies that on July 25th, 2006,
a true and correct copy of the foregoing Reply In Support of Motion to
Dismiss Defendant's Counterclaims was served electronically on
the following attorneys or parties of record:

-  Michael Jungreis

By:  s/ Shirl New Pagano
        Shirl New Pagano

**Davis Wright Tremaine LLP**
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska  99501
(907) 257-5300 · Fax: (907) 257-5399

WBDTD's REPLY IN SUPPORT OF MOTION TO DISMISS
DEFENDANT'S COUNTERCLAIMS - 21

ANC 94602v2 40529-5