## SETTLEMENT AGREEMENT

This Settlement Agreement, dated as of January 1, 2008, is entered into between and among Warner Bros. Domestic Television Distribution, a division of Warner Bros. Television Distribution Inc. ("Warner"), on the one hand, and Fireweed Communications Corporation ("Fireweed"), on the other hand. Warner and Fireweed hereby agree as follows:

1.0     Parties & Effective Date of Settlement

      1.1     The above parties are sometimes referred to in this Settlement Agreement as "the Parties." This Settlement Agreement is effective when each of the Parties has executed and delivered to the other Party a fully executed copy of this Settlement Agreement and all exhibits that the delivering party is required to complete under the terms of this Settlement Agreement.

2.0     Background Facts

This Settlement Agreement is made in light of the following facts:

      2.1     On or about May 25, 2000, Warner and Fireweed entered into a Syndication License Agreement pursuant to which Fireweed licensed from Warner certain rights to broadcast episodes of "Friends" in the Anchorage, Alaska market. That contract is hereinafter referred to as the "Friends Agreement."

      2.2     On or about May 25, 2000, Warner and Fireweed entered into a simultaneous Syndication License Agreement pursuant to which Fireweed licensed from Warner certain rights to broadcast episodes of "The Drew Carey Show" in the Anchorage, Alaska market. That contract is hereinafter referred to as the "Drew Carey Agreement."

      2.3     On or about May 20, 2002, Warner and Fireweed entered into a third Syndication License Agreement pursuant to which Fireweed licensed from Warner certain rights

to broadcast episodes of Friends (2nd Cycle) in the Anchorage, Alaska market. That contract is hereinafter referred to as the "Friends (2nd Cycle) Agreement."

2.4    On or about March 31, 2006, Warner filed suit against Fireweed in the U.S. District Court for the District of Alaska in the case entitled <u>Warner Bros. Domestic Television Distribution v. Fireweed Communications Corporation,</u> Case No. 3:06-cv-00074-TMB (hereinafter the "Pending Case"), seeking recovery of amounts due as a result of default under the Friends Agreement, the Drew Carey Agreement, and the Friends (2nd Cycle) Agreement.

2.5    On or about May 11, 2006, Fireweed filed an Answer in the Pending Case denying liability and asserting Counterclaims against Warner. Fireweed's counterclaims allege, among other things, that Warner: (1) violated federal and state antitrust laws by illegally tying the sale of Friends and The Drew Carey Show; (2) violated federal and state antitrust laws by developing a WB 100+ Network and entering into contracts with third-party syndicators that restricted their right to sell programming to stations that were not affiliated with the WB 100+ Network; (3) breached the Friends Agreement and the Drew Carey Agreement by selling DVDs of Friends and The Drew Carey Show in the Anchorage market and by permitting TBS to cablecast episodes of Friends and The Drew Carey Show in the Anchorage market; (4) committed unfair trade practices by virtue of the foregoing actions; and (5) interfered with Fireweed's prospective relationships with third-party syndicators. Warner filed an answer to Fireweed's Counterclaims denying liability.

3.0    <u>Purpose of this Settlement Agreement</u>

3.1    This Settlement Agreement is entered into in good faith by the Parties to settle all rights, duties, claims, accounts and liabilities between and among them arising from or relating in any way to the facts, issues, claims, counterclaims, causes of action and/or defenses

raised in the Pending Case (collectively, the "Claims"). This Settlement Agreement is not to be deemed an admission of liability or an admission of the merit or lack of merit of any claims or counterclaims released herein.

    3.2    In light of the foregoing, the Parties have agreed to settle and finally resolve the Claims in accordance with the terms set forth in this Settlement Agreement.

4.0    <u>Agreements and Undertakings</u>

    4.1    <u>Payment By Fireweed</u>

In light of the foregoing and in consideration for the contingent agreement of Warner to dismiss its Complaint against Fireweed with prejudice as set forth in ¶ 4.5.1 below, Fireweed agrees and stipulates as follows:

    4.1.1 Fireweed shall pay to Warner the principal sum of Three-Hundred Twenty Thousand Dollars ($320,000.00), in the following manner: (a) $10,000 in cash or immediately available funds upon execution of this Settlement Agreement; (b) execution of a promissory note in the form attached hereto as Exhibit A (the "Promissory Note"), for the principal amount of Three Hundred Ten Thousand Dollars ($310,000.00) plus interest at the rate of four percent (4%) per annum on the unpaid principal balance, to be paid as follows: (i) $3,000 per month on or before the 1st day of each month during the period of January 1, 2008 through December 1, 2008; (ii) $4,000 per month on or before the 1st day of each month during the period of January 1, 2009 through December 1, 2009; (iii) $5,000 per month on or before the 1st day of each month during the period of January 1, 2010 through December 1, 2012; and (iv) a final balloon payment in the amount of all unpaid principal and interest on or before January 1, 2013.

    4.1.2 All payments shall be made by wire transfer into the following account, and shall be applied first to accrued interest, with the balance applied to principal:

JPMorgan Chase Bank
New York, NY
ABA#021000021
For Credit to: Warner Bros. Entertainment Inc.
Account#51-05641

4.2  Default By Fireweed

4.2.1  If Fireweed fails to make any payment required under Section 4.1.1 when due, Fireweed shall be in default. Warner shall provide Fireweed with written notice of default by facsimile and/or certified mail pursuant to Section 11.1 below.

4.2.2  Following receipt of such notice of default, Fireweed shall have ninety (90) days within which to cure the default by making all payments that are then past due including, without limitation, the installment(s) referenced in the notice of default.

4.2.3  If Fireweed fails to cure the default as provided in paragraph 4.2.2, the total principal amount due under Section 4.1.1 shall increase to $520,000 (less any amounts Fireweed has paid on the principal balance prior to default), and Fireweed shall be liable to Warner for payment of the outstanding principal balance plus any accrued interest and other charges.

4.3  Warner's Security Interest

4.3.1  As security for the payment of all amounts due under this Settlement Agreement, Fireweed grants Warner a first priority security interest, to the fullest extent allowed by law, in any and all Federal Communications Commission ("FCC") licenses or authorizations of Fireweed for the station KYES-TV (the "FCC License"), and any and all proceeds thereof. As additional security for payment of the amounts due under this settlement agreement, Fireweed grants Warner a first priority security interest in its _____ model transmitter, serial

number _____, and in any additional or replacement transmitters hereafter acquired by Fireweed, including but not limited to a digital transmitter anticipated to be acquired in 2008 (the "Digital Transmitter"). Warner agrees to subordinate its security interest in the Digital Transmitter to the extent required for Fireweed to gain bona fide financing for the purchase of the Digital Transmitter. The FCC License, Digital Transmitter, and other transmitters are hereinafter referred to as the "Collateral."

        4.3.2   Fireweed shall execute the Security Agreement attached hereto as Exhibit B and deliver it to Warner. In addition, Fireweed shall execute all documents reasonably requested, now or in the future, by Warner to perfect its security interest in the Collateral, and any products or proceeds thereof. Fireweed hereby authorizes Warner to prepare and file a UCC financing statement and a fixture filing for the Collateral.

    4.4    <u>Fireweed's Confession of Judgment</u>

        4.4.1   Upon execution of this Settlement Agreement, Fireweed shall execute and deliver to Warner a Confession of Judgment Without Action in the Courts of the State of Alaska, in the form attached hereto as Exhibit C in the total principal amount of $520,000 (the "Confession of Judgment").

        4.4.2   Provided that Fireweed makes all payments required under 4.1.1 when due, or cures any and all defaults as required by 4.2.2, Warner shall not file the confession of judgment with the Court and shall return the Confession of Judgment and the Promissory Note to Fireweed, each marked "paid in full."

        4.4.3.   If Fireweed defaults on the payment of any amounts required by paragraph 4.1.1, and fails to timely cure any default in accordance with paragraph 4.2.2, Warner may in its sole discretion file the confession of judgment with the court, obtain judgment thereon,

record the judgment, and pursue any and all means of execution. Warner shall only be entitled to execute on the judgment up to an amount equal to the amount of the judgment (including interest on the judgment and any unpaid accrued interest and charges as of the date the confession of judgment is filed), less payments applied to principal under this Settlement Agreement. Upon Fireweed's payment of the judgment in full, less amounts previously applied to principal under this Settlement Agreement, Warner shall file a satisfaction of judgment with the Court. Warner will be entitled to recover its actual attorneys' fees and costs reasonably incurred in enforcing the Confession of Judgment.

    4.5    <u>Dismissal of the Pending Case</u>

        4.5.1    The Pending Case shall be dismissed with prejudice, each party to bear its own costs and attorney's fees. Each party shall instruct its counsel to execute the Stipulation for Dismissal with Prejudice attached hereto as Exhibit D. Fireweed shall deliver an executed copy of the stipulation to counsel for Warner upon execution of this Settlement Agreement, and counsel for Warner shall file the stipulation with the Court.

5.0    <u>Releases</u>

    5.1    Fireweed shall execute and deliver to Warner a Release in the form attached hereto as Exhibit E.

    5.2    Warner shall execute and deliver to Fireweed a Release in the form attached hereto as Exhibit F.

6.0    <u>Matters Not Released Herein</u>

    6.1    Notwithstanding anything else in this Settlement Agreement or the Releases to the contrary, the Parties hereto do not release any matters relating to adherence to and the enforcement of this Settlement Agreement, including but not limited to any obligations created

by the Promissory Note and related documents providing for payment of the settlement sums over a period of time.

7.0    Waiver of Rights under Civil Code Section 1542

7.1    The Parties declare that they understand the full nature, extent, and import of Section 1542 of the California Civil Code and of this entire Settlement Agreement, and have sought and obtained the advice of counsel with respect to that statute and this Settlement Agreement. Accordingly, with respect to the released matters, the Parties hereby waive and relinquish any and all rights or benefits that they may have under the provisions of Section 1542 of the California Civil Code, which reads as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in its favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

8.0    Warranties of Authority and Nonassignment

8.1    Each of the Parties to this Settlement Agreement warrants that said Party has full authority to enter into this Settlement Agreement, to make the Releases required by this Settlement Agreement, and to enter into the undertakings and obligations set forth in this Settlement Agreement. The Parties hereby warrant that they have not assigned their respective claims to any other party or person.

8.2    Each of the Parties to this Settlement Agreement hereby warrants and represents that the person executing this Settlement Agreement on its behalf is fully authorized to do so, and that the authorized agents of each Party have taken all steps required by law or the Parties' bylaws to grant the signatory said authority.

9.0     Further Representations and Warranties

9.1    In entering into this Settlement Agreement, the Parties represent and warrant that they have fully discussed and reviewed all aspects of this Settlement Agreement with their counsel; that they have carefully reviewed and understand all of the provisions of this Settlement Agreement; and that they are freely, knowingly, and voluntarily entering into this Settlement Agreement without any form of duress.

10.0    Mutually Drafted Settlement Agreement

10.1    Each of the Parties hereto has been fully and competently represented by counsel of its own choosing in the negotiations and drafting of this Settlement Agreement. Accordingly, the Parties agree that the rule of construction of contracts resolving any ambiguities against the drafting Party shall be inapplicable to this Settlement Agreement. Further, each Party hereto acknowledges that it has read this entire Settlement Agreement and fully understands its terms, conditions and effects.

11.0    Notices

11.1    All notices and other communications hereunder shall be in writing and shall be deemed given if mailed by certified mail (return receipt requested) or sent via facsimile (with acknowledgment of complete transmission) to the parties at the following addresses (or at such other address for a party as shall be specified by like notice):

        WARNER:    Warner Bros. Entertainment, Inc.
                                4000 Warner Blvd., Building 2, Room #218
                                Burbank, CA 91522
                                Attn: General Counsel
                                Facsimile: (818) 954-6387

-9-

      FIREWEED: _____

                           _____

                           _____

                Attn: _____

                Facsimile: _____

12.0       <u>Alaska Law</u>

        12.1    All questions with respect to the construction of this Settlement Agreement, and the rights and liabilities of the Parties hereto, shall be governed by the laws of the State of Alaska.

13.0       <u>Entire Agreement</u>

        13.1    This Settlement Agreement and its Exhibits contain the entire agreement of the Parties and may not be modified or amended except by a further document in writing and signed by the Parties.  None of the Parties is relying upon any promise, representation or statement not contained within this Settlement Agreement.

14.0       <u>Counterparts</u>

        14.1    The Parties may execute this Settlement Agreement in counterparts, each one of which will be an original or the equivalent thereof.  Signatures by facsimile are binding, and the Parties will exchange duplicate original signatures promptly after execution of this Agreement.

15.0       <u>Severability</u>

        15.1    If any provision in this Settlement Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable for whatever reason, the remaining provisions

not so declared shall nevertheless continue in full force and effect without being impaired in any manner whatsoever.

    IN WITNESS WHEREOF, the Parties hereto have agreed to and executed this Settlement Agreement.

                    WARNER BROS. DOMESTIC TELEVISION
                    DISTRIBUTION, a division of WARNER BROS.
                    DOMESTIC TELEVISION DISTRIBUTION INC.

                    By: _____
                    Name:
                    Its:

                    FIREWEED COMMUNICATIONS
                    CORPORATION

                    By: _____
                    Name: _____
                    Its: _____

APPROVED AS TO FORM:

                    DAVIS WRIGHT TREMAINE LLP
                    Attorneys for Warner Bros. Domestic Television
                    Distribution

                    By _____
                      JOSEPH REECE

HARTIG RHODES HOGE & LEKISCH, PC
Attorneys for Fireweed Communications Corporation


By _____
    MICHAEL JUNGREIS