## SECURITY AGREEMENT

THE UNDERSIGNED, Fireweed Communications Corporation ("Debtor"), whose principal business address is _____, for good and valuable consideration, receipt of which is hereby acknowledged, hereby grants to Warner Bros. Television Distribution, Inc. ("Secured Party") and its successors and assigns a security interest in the property and interest more particularly described on Exhibit A attached hereto and incorporated herein by this reference, together with any and all additions, accessions, replacements, substitutions, proceeds and products thereto (the "Collateral").

This Security Agreement, dated and effective as of January 1, 2008, and the security interests hereby granted are given to Secured Party to secure the full and punctual payment and performance by Debtor of all indebtedness, liabilities and obligations of Debtor to Secured Party under that certain Settlement Agreement between Secured Party and Debtor dated as of January 1, 2008 (the "Settlement Agreement").

DEBTOR HEREBY REPRESENTS, COVENANTS AND AGREES WITH SECURED PARTY AS FOLLOWS:

1.  **Debtor's Status and Ownership.** Debtor is duly organized and existing under the laws of the state in which it was formed. Debtor is the licensee under the FCC license and owns the remaining collateral, and all of the Collateral is free and clear of all security interests and encumbrances of every nature. Debtor will neither transfer, create nor permit the existence of any lien or security interest prior to that of Secured Party upon the Collateral without the prior written consent of Secured Party, excepting only that Secured Party agrees to subordinate its security interest in the initial digital transmitter acquired by Debtor, but only to the extent required to permit Debtor to secure financing for the purchase of the digital transmitter. Any certificate of title, document of title or other evidence of ownership now or hereafter existing on any of the Collateral will be delivered to Secured Party and will, if applicable, recite the interest of Secured Party.

2.  **Fixtures.** The real property to which the Collateral or any part thereof is or will be attached is located in the Municipality of Anchorage, State of Alaska, and is more particularly described on Exhibit B attached hereto and incorporated herein by this reference.

3.  **Performance; Valid Transactions.** Debtor will fully and punctually perform all duties required of Debtor under or in connection with the Collateral to the end that Secured Party's rights with respect to the Collateral or under this Security Agreement are not impaired, damaged or destroyed.

4.  **Collateral Condition; Insurance.** Debtor will take all needful and appropriate action to preserve all Collateral in good repair and in good merchantable and salable condition and will keep the same continuously insured by an insurer approved by Secured Party, against

fire, theft and other hazards, designated at any time by Secured Party, in an amount equal to the full insurable value thereof, with such form of loss-payable clause as designated by and in favor of Secured Party, and will deliver the policies of such insurance and receipts showing payment of premiums therefore to Secured Party. In the event of loss, Secured Party shall have full power to collect any and all insurance upon the Collateral and to apply the same, at its option, to any obligations secured hereby, whether or not matured, or to the restoration, reconditioning or replacement of Collateral. Secured Party shall have no liability for any loss that may occur by reason of omission or lack of coverage of any such insurance.

5. **Taxes.** Debtor will pay before delinquency any tax, assessment or governmental charge that is or may become a lien or charge upon the Collateral or any part thereof or that may impair Secured Party's security interest therein or its opportunity to realize thereon. Debtor will pay any tax that may be levied on any obligation secured hereby or transaction hereunder.

6. **Accounting; Inspection.** Secured Party may, by its designee, inspect the Collateral and Debtor's related books and records at any reasonable times and intervals and, for this purpose, shall have access to Debtor's place of business and its relevant records.

7. **Sales; Collections; Collateral Account**. Debtor shall not sell or dispose of any Collateral without the prior written consent of Secured Party. If Collateral is sold then, upon demand of Secured Party, all cash proceeds shall immediately be deposited in an account with Secured Party, designated as the "Collateral Account," over which Debtor shall have no control and which shall be held as security for the indebtedness of Debtor, and all proceeds consisting of negotiable instruments and chattel paper shall immediately be endorsed and delivered to Secured Party with authority to collect the same. From time to time, Secured Party may, at its discretion, make applications from the Collateral Account onto any indebtedness or obligation secured hereby, whether matured or not.

8. **Expenses.** Secured Party is not required to but may, at its option, pay any tax or other charge payable by Debtor and any filing or recording fee, and any amount so paid shall be repayable by Debtor upon demand. Debtor will further repay Secured Party on demand for all Secured Party's out-of-pocket expenses incurred in inventories, inspections, audits, reconciliations, or other examination or confirmation actions by Secured Party in respect of the Collateral hereunder. All such sums shall bear interest at the lesser of the highest legal rate or Ten and One-Half percent (10.5%) per annum from the date of payment by Secured Party until repaid, and such amounts and interest thereon shall be secured hereby.

9. **Debtor's Business**. Debtor represents and warrants that: (a) Debtor's business and its use of the Collateral is and will be conducted in accordance with all applicable laws, ordinances, and regulations of federal, state and local government; (b) all Indebtedness and obligations secured hereby are recognized to be a single credit transaction between Debtor and Secured Party; and (c) Debtor is and will remain a corporation organized under the laws of the State of Alaska.

10. **Further Assurances.** Debtor, at its sole cost and expense, will at any time and

from time to time hereafter (a) execute such financing statements and other instruments and perform such other acts as may be necessary or as Secured Party may reasonably request to establish and maintain the security interests herein granted by Debtor to Secured Party and the priority and continued perfection thereof; and (b) execute and deliver all such other instruments and perform all such other acts as Secured Party may reasonably request to carry out the transactions contemplated by this Agreement.

**11.    Waivers**. This Security Agreement shall not be qualified or supplemented by a course of dealing between the parties. No waiver or modification by Secured Party of any of the terms and conditions hereof shall be effective unless in writing and signed by Secured Party. No waiver or indulgence by Secured Party as to any required performance by Debtor shall constitute a waiver as to any subsequent required performance or as to other obligations of Debtor hereunder.

**12.    Default**. Time is of the essence in this Security Agreement, and any of the following events shall constitute an event of default hereunder:

(a)    Any failure to pay when due the full amount of any payment of principal, interest, taxes, insurance premiums or other charges that are or may be secured hereby; or

(b)    Any failure to perform as required by any covenant or agreement herein; or

(c)    Falsity of any representation by Debtor herein or in any financial statement given by Debtor to Secured Party in conjunction with the Settlement Agreement; or

(d)    If the Collateral or any material part thereof should be seized or levied upon or be the subject of attachment under any legal or governmental process against Debtor or against the Collateral; or

(e)    If Debtor becomes insolvent or is the subject of a petition in bankruptcy, whether voluntary or involuntary, or in any other proceeding under the federal bankruptcy or similar laws; or if Debtor makes an assignment for the benefit of creditors; or if Debtor is named in or the Collateral is subjected to a suit for the appointment of a receiver.

On the occurrence of any such event of default, and in the event such default is not cured within ninety (90) days of the date Secured Party provides Debtor with written notice of the same, the entire amount of indebtedness secured hereby and interest thereon shall then or at any time thereafter, at the option of Secured Party, become immediately due and payable, and Secured Party shall have an immediate right to pursue the remedies provided herein or at law.

**13.    Remedies**. On the occurrence of an event of default hereunder that is not timely cured, Secured Party shall have all remedies provided by law or equity and, without limiting the generality of the foregoing, Debtor agrees as follows:

(a) Debtor shall put Secured Party in possession of the Collateral upon demand;

(b) Secured Party is authorized to enter any premises where the Collateral, or records thereof, are situated and to take possession of the Collateral and records without notice, demand or legal proceedings;

(c) At the request of Secured Party, Debtor will assemble the Collateral, and records thereof, and make them available to Secured Party at a place designated by Secured Party that is reasonably convenient to both parties; and Secured Party may, at Secured Party's option, sell all or any part of the Collateral and make application of all proceeds to indebtedness or other amounts secured by this Security Agreement;

(d) Debtor shall pay on demand the amount of all expenses reasonably incurred by Secured Party in protecting and realizing on the Collateral. Debtor agrees to pay, if this Security Agreement or any obligation secured by it is referred to an attorney for collection or realization, reasonable attorneys' fees (including those incurred in either trial court or appellate court or without suit), expenses of title search, all court costs and all other legal expenses, and sums so obligated are secured hereby;

(e) A period of ten (10) days from the time notice is sent to Debtor shall be a reasonable period of notification of a sale or other disposition of the Collateral by or for Secured Party. Any notice or other communication from Secured Party to Debtor under or pursuant to this Agreement or required by any statute shall be addressed to the mailing address of Debtor as herein stated;

(f) At the option of Secured Party, Secured Party shall be entitled to apply for and obtain the appointment of a receiver to manage the disposition of any Collateral, and the net proceeds of such receivership, after the expenses thereof, shall be applied to the indebtedness and obligations secured hereby; and

(g) Debtor agrees to pay any deficiency remaining after collection of or realization by Secured Party on the Collateral. In the event that the amounts realized from the Collateral exceed all indebtedness and other obligations of Debtor, Secured Party shall remit the balance to Debtor.

(h) Secured Party shall have the right to cause Debtor to seek FCC approval for the assignment of the FCC Licenses (as defined in Exhibit A) to any person making an offer that is acceptable to Secured Party to purchase the FCC License, or to cause the FCC License to be assigned, subject to compliance with FCC requirements, to a court-appointed receiver.

(i) Debtor shall have, in addition to the above, all the remedies of a secured party under the Alaska Uniform Commercial Code.

**14. Controlling Law; Assignments.** This Security Agreement and the indebtedness

and obligations hereby secured are subject to the laws of the State of Alaska and are to be construed in accordance therewith except to the extent that the Uniform Commercial Code requires that the perfection, priority or enforcement of the security interests provided for herein may be governed by the law of the jurisdiction where Debtor is organized or Collateral is located if such is not the State of Alaska. All rights of Secured Party hereunder extend to the successors and assigns of Secured Party and to the holder of any note evidencing indebtedness hereby secured. Obligations of Debtor hereunder extend to and are binding upon Debtor's heirs, representatives, successors and assigns.

15. **Debtor's State of Organization; Location of Collateral**. Debtor represents that (a) it is and will remain a corporation organized under the laws of the State of Alaska and (b) the address set forth in this Security Agreement is and will remain its principal place of business and the location of its chief executive offices and the address at which it will keep its records concerning the Collateral. Debtor represents and covenants that it has not done and that after the date hereof it will not do, business under any names other than the name specified herein. Neither Debtor nor its agents, servants or employees will change the location of the Collateral or related books and records except upon prior written notice to and approval by Secured Party, and unless Secured Party's security interest therein will remain thereafter to be perfected as a lien of first priority (or in the case of the Debtor's Digital Transmitter, as defined in Exhibit A, second in priority if permitted under the terms of this Security Agreement). Debtor will not change its form or state of organization, enter into any merger or consolidation, or move the location of its chief executive offices unless Debtor shall have given Secured Party not less than thirty (30) days prior written notice of such change, merger or move.

16. **Authorization to File Financing Statement.** Debtor authorizes Secured Party to file a financing statement, and file and/or record a fixture filing, describing the Collateral.

**DEBTOR:**          <u>FIREWEED COMMUNICATIONS CORPORATION</u>

By _____
    Its _____

By _____
    Its _____

Mailing Address of Debtor [Print]:

_____
Street

_____
City        State

DWT 3157860v4 0040529-000005

ATTACHMENTS:

Exhibit A
Exhibit B

Exhibit A

All of Debtor's now owned or hereafter acquired goods and other personal property, including all tangible and intangible items and including without limitation the following (collectively, the "Collateral"):

**(a) Equipment, Etc.** All of Debtor's right, title and interest in its _____ model transmitter, serial number _____, and in any additional or replacement transmitters hereafter acquired by Fireweed, including but not limited to a digital transmitter anticipated to be acquired in 2008 (the "Digital Transmitter"), whether completed or under construction, and together with all additions and substitutions for such equipment and all parts, instruments, accessories, alterations, modifications, replacements, additions, fitting and accessions to said equipment, including all supplies, operating manuals, plans, specifications, improvements and tools therefore or thereto (the foregoing items shall collectively be referred to herein as the "Equipment").

**(b) Fixtures.** All of Debtor's right, title, and interest in and to all Equipment affixed to or to become affixed to any real property owned, leased or operated by Debtor or otherwise used in connection with the business or operations of Debtor (any and all such fixtures being the "Fixtures").

**(c) FCC Licenses.** All licenses, franchises, permits and authorizations issued by the Federal Communications Commission ("FCC") with respect to the KYES station (the "FCC Licenses") to the extent, and only to the extent, it is lawful to grant a security interest in such licenses, franchises, permits and authorizations, and also including, to the maximum extent permitted by law, the right to receive all proceeds derived or arising from or in connection with the sale or assignment of the FCC Licenses; and

**(d) Insurance.** All insurances now or hereafter in effect with respect to the Equipment, Fixtures, and/or the FCC Licenses including, without limitation, (i) all claims and all returns of premiums, dues, calls, and assessments that are not immediately applied to premiums, dues, calls, and assessments that accrue from time to time, and all other sums or claims for sums due or to become due under the foregoing insurances and (ii) all right, title, and interest in, to, or under the foregoing.

**(e) Proceeds and Products.** All proceeds and products of any and all of the foregoing Collateral and, to the extent not otherwise included, all payments under insurance (whether or not Secured Party is a loss payee thereof), or any indemnity, warranty or guaranty, payable by reason of loss, damage, or otherwise, with respect to any of the foregoing Collateral.

Exhibit B

DWT 3157860v4 0040529-000005