UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

WARNER BROS. DOMESTIC           )
TELEVISION DISTRIBUTION,        )
a division of WARNER BROS.      )
TELEVISION DISTRIBUTION INC.,   )
a Delaware Corporation,         )
                                )
                Plaintiff,      )
                                )
        vs.                     )
                                )
FIREWEED COMMUNICATIONS         )
CORPORATION, an Alaska          )
Corporation,                    )
                                )
                Defendant.      )
_____) Case No. 3:06-cv-00074-TMB


TRANSCRIPT OF PROCEEDINGS
BEFORE
JUDGE ROSS

Pages 1 - 12, inclusive

September 27, 2007

Commencing at 4:45 p.m.


APPEARANCES

For Plaintiff:    Joseph L. Reese, Esq.
                  Cheryl Schultz, Esq.

For Defendant:    Michael Jungreis, Esq.

EXHIBIT 3
1 of 12

```
1                    P R O C E E D I N G S

2                         ---oOo---

3 (4:54:39)

4            THE COURT:  Okay.  We're going on record in the

5 U.S. District Court Case, Judge Burgess's case, Number

6 3:06-0074-TMB Civil, called Warner Brothers Domestic

7 TV Distribution versus Fireweed Communications.

8            Oops.  I don't have my -- did that pick up,

9 Cheryl?

10           THE CLERK:  I'm sure it did.

11           THE COURT:  Okay.  Anyway, the parties are here.

12 Joe Reece for the plaintiff.

13           THE CLERK:  There are two more here.

14           THE COURT:  Can you turn your Blackberries off?

15           And Mike Jungreis for the defendant.  The

16 parties have been mediating all day and have a tentative

17 settlement conditional on some accounting and

18 documentation.

19           And Joe or Mike, do you want to put it on the

20 record?

21           MR. JUNGREIS:  Okay.

22           THE COURT:  This is Mike Jungreis.

23           MR. JUNGREIS:  Thank you, Your Honor.  Let me

24 take a stab at it.

25           The agreement has to do with all the claims that
```

EXHIBIT 3
2 of 12

1 are currently at issue in the case that you referenced.

2 And the agreement would be as follows:

3          First of all, on or before the end of the year,

4 Fireweed Communications, the defendant, would pay to the

5 designated plaintiff entity $10,000 in cash.  The --

6 additionally, there would be a note bearing four percent

7 interest in the amount of $310,000.

8          MR. REECE:  The note would be in the amount of

9 520,000.

10          MR. JUNGREIS:  I'm sorry.  The note would be in

11 the amount of $510,000.  However, only 310,000 of that

12 would bear interest.  The remaining $200,000 would not

13 bear interest and would not be repaid except in the event

14 of a default under circumstances I will describe in a

15 minute.

16          The 320,000 interest-bearing portion of the note

17 would be --

18          MR. REECE:  310.

19          MR. JUNGREIS:  310, pardon me.  Thank you.

20 310,000 interest-bearing portion of the note would be paid

21 at a blended amount of -- blended meaning interest and

22 then the remaining to be assigned against the principle of

23 $3,000 a month for the year commencing January 1, 2008.

24 That would be the first payment.  It would be paid at a

25 rate of $4,000 for the 12 monthly payments that commenced

EXHIBIT 3
3 of 12

Page 4

1 on January 1st, 2009, and would be paid at a $5,000

2 monthly rate for the three years commencing January 1st,

3 2010.

4       At the end of that period any remaining balance

5 would -- remaining balance as to the interest-bearing

6 portion, the portion which was originally 310,000, would

7 be payable in full. If that occurs, the $200,000 portion,

8 noninterest-bearing portion, of the note would be excused,

9 and the note and the security arrangements that I will be

10 describing in a minute would be released.

11       There will be no prepayment penalty. A

12 prepayment can be in the amount of the interest-bearing

13 portion balance that's owing, meaning if that portion is

14 paid off early, the remaining $200,000 would be excused.

15       The note in its entirety would be secured by

16 security interests in KYES's FCC television license, in

17 the transmitter owned by the station and the other

18 property.

19       MR. REECE: The future -- any future transmitter

20 that is purchased.

21       MR. JUNGREIS: Yeah. Any future transmitter.

22 And I will just indicate that the parties have been

23 specifically discussing the digital transmitter that will

24 have to be put in service in 2008 -- or I mean 2009.

25       As to that transmitter, however, Warner

EXHIBIT 3
4 of 12

1 Brothers, the plaintiff, would agree to subordinate their

2 security interest to any bona fide financing that's

3 necessary to purchase that transmitter.

4          The -- this agreement is contingent on

5 obtaining, by November 1, 2007, reasonably acceptable --

6 acceptable in a reasonable way -- financial statements

7 from the defendant Fireweed Communications that, you know,

8 reflect its actual financial condition.

9          Any other contingencies?

10          MR. REECE:  Just to -- a couple of additional

11 things.  The payments will be applied first to interest

12 and then to the unpaid portion of the $310,000 principle

13 amount.  And the security would also, I think we agreed,

14 it would include that assignment of the tower lease, if

15 Warner Brothers desires?

16          MR. JUNGREIS:  Yeah.  I think that's a -- for

17 security purposes.

18          MR. REECE:  For security purposes.

19          MR. JUNGREIS:  With respect to default there

20 would be a 90-day cure period after any default in monthly

21 payments, and during that time the default can be cured by

22 payment of any monthly amounts that are owing with any

23 additional accrued interest.  After 90 days, the secured

24 party, Warner Brothers, would be entitled to accelerate

25 the remaining balance, including both interest-bearing and

EXHIBIT 3
5 of 12

1 noninterest-bearing portions of the note.

2        You know, in discussions with the party as to

3 properly memorialize this agreement, we may decide to

4 divide this note into maybe two notes or some other way so

5 long as they're covered by the security that is more

6 efficient.  But at any rate, the entire balance that's

7 owing is agreed to, including the part that we excused if

8 it's paid on time, would become due and owing and would be

9 covered by the collateral which could be then foreclosed.

10        MR. REECE:  The maturity date would be five

11 years from January 1st, 2008, which the parties recognize

12 would involve a balloon payment.

13        MS. SCHULTZ:  So the balloon payment is due on

14 when specifically?

15        MR. JUNGREIS:  It would be due, if I recall

16 correctly, January 1st, 2013, and we would agree that on

17 payment of the balloon the remaining $200,000 would be

18 excused and all the collateral would be released, as would

19 also occur with any prepayment.

20        MS. SCHULTZ:  With the only other thing that I

21 add that we discussed is the -- if the acceleration takes

22 place and we accelerate the debt, that we have a process

23 of stipulated judgment that we can enter since we don't

24 want to end up in future litigation (indiscernible) that.

25        So I can show you an example of what this looks

EXHIBIT 3
6 of 12

1 like, because I have one from a different case, but it's

2 basically --

3          THE COURT:  Ms. Schultz, can you speak into the

4 microphone?

5          MS. SCHULTZ:  Sure.  It's -- it looks like we'd

6 enter now into consent judgment based on these terms.  You

7 file the consent judgment attaching the settlement

8 agreement.  The settlement agreement itself would attach

9 something that we would file if, you know, the payments

10 aren't made within the 90-day period.  And it's typically

11 something that's called a stipulated judgment.  It will

12 have the terms with blanks for the numbers.

13          MR. REECE:  There's a process in Alaska.  It's

14 called judgment by confession.

15          MS. SCHULTZ:  Okay.

16          MR. REECE:  And with the approval of your

17 counsel, I think maybe the best way for us to do it is to

18 provide you with an executed confession of judgment, which

19 could be filed with the court in the event that there was

20 a default.

21          MS. SCHULTZ:  Okay.

22          THE COURT:  I believe the parties talked about

23 something or a procedure where Warner Brothers would give

24 notice to Fireweed so that there wasn't an ex parte act.

25 There would be some ability to respond to say, no, that's

EXHIBIT 3
7 of 12

1 not true.

2        MS. SCHULTZ:  I think that that notice is part

3 of the 90-day notice period.  I mean, my expectation would

4 be if there's a late payment, we would give notice, and

5 then the 90 days would run from our time of notice.  We

6 would then, at the end of the 90 days, if nothing had

7 happened, we would file this --

8        MR. JUNGREIS:  You would give us a notice that

9 would say, if you don't cure by day X, we will be able to

10 file this confession.

11       MS. SCHULTZ:  Okay.  As part of the settlement,

12 we would ask, if we filed the confession -- well, I need

13 to see what it looks like.

14       THE COURT:  Let me say one thing for the record.

15 Speaking was Ms. Cheryl Schultz appearing representing

16 Warners.  It's S-c-h-u-l-t-z.

17       MS. SCHULTZ:  That's right.

18       THE COURT:  And here for Fireweed also is Karen

19 Schatz, S-c-h-a-t-z, and Jeremy Land.

20       MR. LANSMAN:  Lansman, L-a-n-s-m-a-n.

21       THE COURT:  And these are the principals behind

22 the -- representing the two corporations involved.

23       MR. JUNGREIS:  One thought that occurs to me is

24 when we create the documentation for this and close this

25 settlement agreement, if there's no objection from you, I

EXHIBIT 3
8 of 12

Page 9

1 would like to be able to structure it in a way where

2 KYES or Fireweed Communications would not have to report

3 the $200,000 punitive or penalty amount as an existing

4 obligation.

5          So to the extent they're applying for financing,

6 they'd prefer not to have to say, you know, here's how

7 much we owe.  It would be better if there was some way of

8 describing it as a penalty, a contingent penalty, or

9 something like that so that -- you know, it would just

10 make life easier for them.

11          MR. REECE:  I understand what you're saying, but

12 I think that our agreement to them would be conditioned on

13 not jeopardizing our security interests, having the

14 security secure that 200,000 as well as the $310,000.

15          MR. JUNGREIS:  Right, right.  Well, of course.

16          THE COURT:  Can I ask the parties:  Is there

17 anything else that you want to put on the record?

18          MR. REECE:  Not that I can think of at this

19 time.

20          THE COURT:  In the mediation I didn't tell Judge

21 Burgess anything but -- other than it's not settled or if

22 it's settled, the terms of this.  Do you want me to hold

23 this on the record in secret or in confidence until it's

24 resolved, or do you want me to e-mail -- I think her name

25 is Denali, his in-court case manager, and tell her there's

EXHIBIT 3
9 of 12

1 a tentative settlement and leave it at that, that it

2 should be documented?

3          MR. JUNGREIS:  Well, yeah, two things, because,

4 number one -- that's a good point, Your Honor, and my

5 suggestion is that you go ahead and let her know that, and

6 that furthermore, we agree at this point to waive any

7 deadlines that are occurring, at least until we get, you

8 know, the next -- probably 45 to 60 days is what it's

9 going to take to get all the documentation completed.

10          MS. SCHULTZ:  So just agree to a stay?

11          MR. JUNGREIS:  Right.

12          THE COURT:  So I will tell Denali Elsmore that

13 there's a tentative settlement.  The parties are going to

14 work on that and they will probably, if things go through,

15 we'll probably ask Judge Burgess for some modifications of

16 this trial-setting order.

17          MR. JUNGREIS:  Right.  And we've got some

18 discovery requests out, and I'm assuming that we're both

19 agreeing we're not going to be attempting to adhere to

20 those deadlines at this point.

21          MS. SCHULTZ:  Yeah.  Absolutely.

22          THE COURT:  And I don't know if it was said, but

23 the counterclaims -- this resolves all claims between

24 parties of the future releases?

25          MS. SCHULTZ:  Yes.

EXHIBIT 3
10 of 12

1          MR. JUNGREIS:  That's right.  And the case --

2 matter would be dismissed with prejudice.

3          THE COURT:  Okay.  That's it.

4          MR. JUNGREIS:  Thanks very much.

5          MS. SCHULTZ:  Thank you, Your Honor.

6          (Proceedings concluded)

7 (5:08:05)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT 3
11 of 12

1          TRANSCRIBER'S CERTIFICATE

2

3          I, Deirdre J.F. Radcliffe, hereby certify that the

4    foregoing transcript is a true, accurate, and complete

5    transcript of proceedings in Case No. 3:06-cv-00074-TMB,

6    Warner Bros. vs. Fireweed Communications, transcribed by

7    me from a copy of the CD recording to the best of my

8    knowledge and ability.

9

10

11   _June 9, 2008_          _Deirdre Radcliffe_____
     Date                    Deirdre J.F. Radcliffe, Transcriber

12

13

14

15

16

17

18

19

20

21

22

23

24

25